# SUPREME COURT OF THE UNITED STATES

## DANIEL RIVAS-VILLEGAS *v.* RAMON CORTESLUNA

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 20–1539.   Decided October 18, 2021

PER CURIAM.

Petitioner Daniel Rivas-Villegas, a police officer in Union City, California, responded to a 911 call reporting that a woman and her two children were barricaded in a room for fear that respondent Ramon Cortesluna, the woman's boyfriend, was going to hurt them. After confirming that the family had no way of escaping the house, Rivas-Villegas and the other officers present commanded Cortesluna outside and onto the ground. Officers saw a knife in Cortesluna's left pocket. While Rivas-Villegas and another officer were in the process of removing the knife and handcuffing Cortesluna, Rivas-Villegas briefly placed his knee on the left side of Cortesluna's back. Cortesluna later sued under Rev. Stat. §1979, 42 U. S. C. §1983, alleging, as relevant, that Rivas-Villegas used excessive force. At issue here is whether Rivas-Villegas is entitled to qualified immunity because he did not violate clearly established law.

The undisputed facts are as follows. A 911 operator received a call from a crying 12-year-old girl reporting that she, her mother, and her 15-year-old sister had shut themselves into a room at their home because her mother's boyfriend, Cortesluna, was trying to hurt them and had a chainsaw. The girl told the operator that Cortesluna was "'always drinking,'" had "'anger issues,'" was "'really mad,'" and was using the chainsaw to "'break something in the house.'" *Cortesluna* v. *Leon*, 979 F. 3d 645, 649 (CA9 2020). A police dispatcher relayed this information along with a description of Cortesluna in a request for officers to respond.

Per Curiam

Rivas-Villegas heard the broadcast and responded to the scene along with four other officers. The officers spent several minutes observing the home and reported seeing through a window a man matching Cortesluna's description. One officer asked whether the girl and her family could exit the house. Dispatch responded that they "'were unable to get out'" and confirmed that the 911 operator had "'hear[d] sawing in the background'" and thought that Cortesluna might be trying to saw down the door. *Cortesluna* v. *Leon*, 2018 WL 6727824, \*2 (ND Cal., Dec. 21, 2018).

After receiving this information, Rivas-Villegas knocked on the door and stated loudly, "'police department, come to the front door, Union City police, come to the front door.'" *Ibid.* Another officer yelled, "'he's coming and has a weapon.'" *Ibid.* A different officer then stated, "'use less-lethal,'" referring to a beanbag shotgun. *Ibid.* When Rivas-Villegas ordered Cortesluna to "'drop it,'" Cortesluna dropped the "weapon," later identified as a metal tool. *Ibid.*

Rivas-Villegas then commanded, "'come out, put your hands up, walk out towards me.'" 979 F. 3d, at 650. Cortesluna put his hands up and Rivas-Villegas told him to "'keep coming.'" *Ibid.* As Cortesluna walked out of the house and toward the officers, Rivas-Villegas said, "'Stop. Get on your knees.'" *Ibid.* Plaintiff stopped 10 to 11 feet from the officers. Another officer then saw a knife sticking out from the front left pocket of Cortesluna's pants and shouted, "'he has a knife in his left pocket, knife in his pocket,'" and directed Cortesluna, "'don't put your hands down,'" "'hands up.'" 2018 WL 6727824, \*2. Cortesluna turned his head toward the instructing officer but then lowered his head and his hands in contravention of the officer's orders. Another officer twice shot Cortesluna with a beanbag round from his shotgun, once in the lower stomach and once in the left hip.

After the second shot, Cortesluna raised his hands over his head. The officers shouted for him to "'get down,'"

which he did. Another officer stated, "'left pocket, he's got a knife.'" *Ibid.* Rivas-Villegas then straddled Cortesluna. He placed his right foot on the ground next to Cortesluna's right side with his right leg bent at the knee. He placed his left knee on the left side of Cortesluna's back, near where Cortesluna had a knife in his pocket. He raised both of Cortesluna's arms up behind his back. Rivas-Villegas was in this position for no more than eight seconds before standing up while continuing to hold Cortesluna's arms. At that point, another officer, who had just removed the knife from Cortesluna's pocket and tossed it away, came and handcuffed Cortesluna's hands behind his back. Rivas-Villegas lifted Cortesluna up and moved him away from the door.

Cortesluna brought suit under 42 U. S. C. §1983, claiming, as relevant here, that Rivas-Villegas used excessive force in violation of the Fourth Amendment. The District Court granted summary judgment to Rivas-Villegas, but the Court of Appeals for the Ninth Circuit reversed. 979 F. 3d, at 656.

The Court of Appeals held that "Rivas-Villegas is not entitled to qualified immunity because existing precedent put him on notice that his conduct constituted excessive force." *Id.,* at 654. In reaching this conclusion, the Court of Appeals relied solely on *LaLonde* v. *County of Riverside*, 204 F. 3d 947 (CA9 2000). The court acknowledged that "the officers here responded to a more volatile situation than did the officers in *LaLonde*." 979 F. 3d, at 654. Nevertheless, it reasoned: "Both *LaLonde* and this case involve suspects who were lying face-down on the ground and were not resisting either physically or verbally, on whose back the defendant officer leaned with a knee, causing allegedly significant injury." *Ibid.*

Judge Collins dissented. As relevant, he argued that "the facts of *LaLonde* are materially distinguishable from this case and are therefore insufficient to have made clear to every reasonable officer that the force Rivas-Villegas used

here was excessive." *Id.,* at 664 (internal quotation marks omitted).

We agree and therefore reverse. Even assuming that controlling Circuit precedent clearly establishes law for purposes of §1983, *LaLonde* did not give fair notice to Rivas-Villegas. He is thus entitled to qualified immunity.

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White* v. *Pauly*, 580 U. S. ___, ___ (2017) (*per curiam*) (slip op., at 6) (internal quotation marks omitted). A right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix* v. *Luna*, 577 U. S. 7, 11 (2015) (*per curiam*) (internal quotation marks omitted). Although "this Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White*, 580 U. S., at ___ (slip op., at 6) (alterations and internal quotation marks omitted). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau* v. *Haugen*, 543 U. S. 194, 198 (2004) (*per curiam*) (internal quotation marks omitted).

"[S]pecificity is especially important in the Fourth Amendment context, where . . . it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix*, 577 U. S., at 12 (alterations and internal quotation marks omitted). Whether an officer has used excessive force depends on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham* v. *Connor*, 490 U. S. 386, 396 (1989); see

also *Tennessee* v. *Garner*, 471 U. S. 1, 11 (1985) ("Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force"). However, *Graham*'s and *Garner*'s standards are cast "at a high level of generality." *Brosseau*, 543 U. S., at 199. "[I]n an obvious case, these standards can 'clearly establish' the answer, even without a body of relevant case law." *Ibid.* But this is not an obvious case. Thus, to show a violation of clearly established law, Cortesluna must identify a case that put Rivas-Villegas on notice that his specific conduct was unlawful.

Cortesluna has not done so. Neither Cortesluna nor the Court of Appeals identified any Supreme Court case that addresses facts like the ones at issue here. Instead, the Court of Appeals relied solely on its precedent in *LaLonde*. Even assuming that Circuit precedent can clearly establish law for purposes of §1983, *LaLonde* is materially distinguishable and thus does not govern the facts of this case.

In *LaLonde*, officers were responding to a neighbor's complaint that LaLonde had been making too much noise in his apartment. 204 F. 3d, at 950–951. When they knocked on LaLonde's door, he "appeared in his underwear and a T-shirt, holding a sandwich in his hand." *Id.,* at 951. LaLonde testified that, after he refused to let the officers enter his home, they did so anyway and informed him he would be arrested for obstruction of justice. *Ibid.* One officer then knocked the sandwich from LaLonde's hand and "grabbed LaLonde by his ponytail and knocked him backwards to the ground." *Id.,* at 952. After a short scuffle, the officer sprayed LaLonde in the face with pepper spray. At that point, LaLonde ceased resisting and another officer, while handcuffing LaLonde, "deliberately dug his knee into LaLonde's back with a force that caused him long-term if not permanent back injury." *Id.,* at 952, 960, n. 17.

The situation in *LaLonde* and the situation at issue here

diverge in several respects. In *LaLonde*, officers were responding to a mere noise complaint, whereas here they were responding to a serious alleged incident of domestic violence possibly involving a chainsaw. In addition, LaLonde was unarmed. Cortesluna, in contrast, had a knife protruding from his left pocket for which he had just previously appeared to reach. Further, in this case, video evidence shows, and Cortesluna does not dispute, that Rivas-Villegas placed his knee on Cortesluna for no more than eight seconds and only on the side of his back near the knife that officers were in the process of retrieving. LaLonde, in contrast, testified that the officer deliberately dug his knee into his back when he had no weapon and had made no threat when approached by police. These facts, considered together in the context of this particular arrest, materially distinguish this case from *LaLonde.*

"Precedent involving similar facts can help move a case beyond the otherwise hazy borders between excessive and acceptable force and thereby provide an officer notice that a specific use of force is unlawful." *Kisela* v. *Hughes*, 584 U. S. \_\_\_, \_\_\_ (2018) (*per curiam*) (slip op., at 5) (internal quotation marks omitted). On the facts of this case, neither *LaLonde* nor any decision of this Court is sufficiently similar. For that reason, we grant Rivas-Villegas' petition for certiorari and reverse the Ninth Circuit's determination that Rivas-Villegas is not entitled to qualified immunity.

*It is so ordered.*